The next case today is the case of in remarriage of Jones, Kelly Jones and Michael Jones. And we have Mr. Kiyonka for the appellant and we have Charles Courtney for the acquittee. So Mr. Kiyonka, when you're prepared, you can begin. Thank you, Your Honor. Good morning. Good morning. I'm Edward Kiyonka and I represent Dr. Michael Jones. Our appeal comprises four points. First, the trial court erred in calculating Dr. Michael's net income for purposes of the child support award. Second, the trial court erred and abused his discretion in awarding child support of $18,000 a month. Far, far beyond the proven needs of the children to maintain their pre-dissolution lifestyle and then some. Third, the trial court maintenance award of $8,500 a month for eight and a half years is an abuse of discretion. And fourth, the trial court abused his discretion in setting interest rates on the unpaid balance of the judgment. I think it's fair to say that all the facts essential to these issues are not in dispute. Point one, the child support statute, section 50583, which we've all heard about today, the parent's net income for child support purposes starts with net income from all sources. In this case, that amount was stipulated. Michael's net income is stipulated to be $82,360 a month. Now, under the statute, then, the trial court must deduct certain other items, one of which is payments for debts that represent reasonable and necessary expenses for the production of income. In this case, Michael had five such debts, also all undisputed. His student loan debt and debt which he incurred personally for the purchase of shares and property in other iClinics, which is one of the ways in which his medical practice expands. The actual payments on these debts, which were shown to be bona fide debts, was $28,611 a month. These debts had terms varying from a few years to 10 years to some unknown term for the student loans. There's no dispute in the record that these debts meet the statutory requirement of reasonable and necessary for the production of income. The trial judge did not find otherwise and seems to assume that in that portion of the order. The trial court mother re-amortized these loans for a period of 28 years. Mr. Kiyoka, let me interrupt you. It was my understanding that the trial court found that it was not reasonable to amortize the debt with the ESC share. Yeah, that's a very good point. We're not talking about whether the loans were reasonable or necessary. It's the amortization. She said it's not reasonable to re-amortize the loans. Right. The amount of the loan was what it was. But there's no statutory authority for doing that. We say that the statute, there's nothing in the statute that says if the court finds that the debt was reasonable and necessary, then the payments are deductible. In fact, the statute even contemplates a situation where the debt payments may be shorter than the term of the child support. Because the next sentence of 505A38 says, the court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due. And shall enter an order containing provisions for self-executing increases after it's due. So it contemplates that that legitimate debt is deductible. Now, the trial court may have some discretion in after you get to the bottom line figure. When you get to that figure, that's computed by following the statutory requirements. But nothing in the statute says that the judge has discretion to re-amortize that debt. Does the judge have the discretion to review a debt, review the amortization, and as a matter of credibility, come to the conclusion that this is not reasonably done, it's done for purposes other than legitimate financial purposes? Yes, I think hypothetically that could be done, Your Honor. But there was no such evidence in this case. The evidence in this case that these were all legitimate business debts that were arm's length transactions. Well, I don't think that's in question. I'm talking strictly about the amortization. Yes, well, the amortization was part of the debt. In other words, he had no choice with respect to this amortization. If they wanted to show that there was something wrong, something that was like an insider deal or something, such as in the Hill case, that resulted in a shorter amortization to make the payments higher in order to reduce child support, they could have done that. But there was no evidence of that in this case. There was no evidence that the amortization and the debt was anything other than done in the ordinary course of business. You can't reamortize your student debt. No, but the ordinary course of business is really not the issue. The issue is whether or not it was reasonable to amortize the debts for the ESC shares now I'm talking about. What Justice Goldenhirsch was asking about is can you do that to avoid the payment of child support so that your obligations become so high when there's obviously better ways to amortize and not have to pay so much? Well, except, Your Honor, these are actual payments he's actually paying. I know, but he did reamortize his ESC debt with Regions Bank, and although the interest rate went down a half a percent, I think, he made it 10 years. He could have made it 20 years, which would have really reduced his obligation. Except, Your Honor, there's no evidence in the record. I wish there was evidence in the record more specific on this, but there's no evidence in the record I think would be their burden to show that that amortization is wrong, and they didn't do so. There's no evidence in the record that shows that they could have gotten more than a 10-year amortization on that loan. Can you tell me to clarify which debts were incurred in the amortization setup after the breakdown? Your Honor, we adopted – we have a chart on page 9 of our brief, and the record suggests that these debts were all incurred either before or the original debt for the ESC shares, which was then refinanced. That original debt was incurred before the breakdown, and all of the other debts were incurred before the dissolution action was filed. I don't think that creates any inference that this was done for the purpose of reducing child support. As far as the record shows, these were the terms that were imposed on these particular debts, and there's no showing. I think – I wish we could ask the Court to take judicial notice of this. It's probably not judicially noticeable, but I think that testimony could have been provided to show that you could not have gotten a longer term for these debts. These were all arm's-length transactions. These were negotiated business debts in arm's-length transactions, and we have to assume that these are the terms that were imposed or the best terms that could be obtained in the negotiation for the purchase of these shares. I think the main thing is these are ordinary business transactions, including the amortization term. And there's nothing in the record to support any suggestion that this was done for the purpose of reducing child support. But the re-amortization – I'm sorry – of the ESC loan was done in 2014, and the petition for dissolution was filed in 2013. Right, right. I think I did say, Your Honor, that that was a refinance of an earlier debt because there's a new payment. Right, and that's what the Court finds unreasonable, right? Well, the Court finally found that it was unreasonable to reduce the child support because of the – these actual payments. But I don't think the Court can do that. That is either an error of law or certainly abuse of discretion when there's no evidence in the record at all that Dr. Michael had any alternative. Where is the evidence that he had any alternative except to accept these terms? And they all predate the dissolution of the student loan. It goes back to when they were students. The other debts go back to before the parties separated. You raise an interesting point, though, that the – whether the Court can figure out re-amortization without any basis for doing so. That's exactly our point, Your Honor. We think that is either an error of law or an abuse of discretion. Otherwise, the Court could reconfigure any of these various items if it just thought it wasn't fair for some reason in that case. I think the Court has to follow the statute. The Court has to do what Section 503 says. Now, when the Court gets down to the bottom line, after having done that, then the Court can exercise discretion. There's no question it can exercise discretion in setting the amount of the child support in relation to the guidelines. As we've shown in our brief, the Court doesn't have to follow the guidelines. They're not mandatory. In this case, the guideline would require 32 percent because there's three children. The Court could set it above. The Court could set it at. The Court could set it below. That's where the discretion comes in, not in deciding whether these debts are really deductible from income or not. The statute controls. The statute says the debts are to be deducted. So you're saying that if someone were to enter into legitimate debts that were related to necessary business expenses and front-loaded it, the Court has no discretion to alter that under the statute? Not if it was not done with a view towards the child support if it was done in the ordinary course of business. But still, isn't that discretionary? I mean, you're saying that they have no discretion even if it was done to further their business. That's right. Because the statute means what it says. There's no exception in the statute. The statute doesn't say you have discretion to reamortize this debt. The debt is the debt. But it doesn't say you can't. It says that you have to acknowledge reasonable and necessary business expenses. Is that right? You're saying that's the same. They're all wrapped in together. This Court will define reasonable and necessary in the Davis case, and we've cited that. And, you know, these debts, there's no claim that these debts were not reasonable. I mean, these were terms of purchasing, aside from the student loan, terms of purchasing additional businesses. I understand that. I agree with that. There's no doubt that they were necessary for the production of income. That's the issue. Were they necessary for the production of income? Were they reasonable for the production of income? But if I went out, if I were to owe child support and went out and made sure that those debts were paid over a five-year period instead of a ten-year period, because, let's say, I anticipated that my spouse would only be eligible for support for five years, that the Court has no discretion to look at that amortization? Well, first of all, you're assuming a factual situation where it was done for the purpose of child support. I know. There's no showing that he could have had any different terms in this case. It wasn't a matter of his discretion in setting those terms. But you're saying that there's no discretion, period. There's discretion at the end of the process. The discretion comes in at the end of the process in setting the amount of the child support, and the statute contemplates that. The statute says if the debt expires before the child support runs out, then you can automatically increase the child support when the debt runs out. What about the Fifth District case they cite, Roper v. Chow? Yes, the Roper case, Your Honor, that is not authority. In that case... Not authority? Well, I mean, it's not authority at this point here. Yes. Because, and that's the only case the trial court relied on here, although there is a later case that came down after we filed our first briefs, the Hill case. We've talked about both of those in our briefs, the Hill case and our reply brief. In the Roper case, you had a young man who decided he wanted to go to law school, and so he went to St. Louis. He even got a joint law degree and MBA. And in the course of that, he incurred $180,000 in student debt. And the trial court in that case specifically found that that debt was not reasonable and therefore was not necessary. So the court found it didn't meet the statutory requirements, so they had discretion then to disallow part of that debt. It didn't reamortize it. It disallowed part of the debt because the court said it wasn't reasonable. But didn't the court also reamortize the debt that was over a 40-year period instead of what had happened or what the individual had amortized it? I mean, there was reamortization in the Roper case. Well, because they disallowed it. They disallowed it. I'm sorry. Oh, my God. Sorry. I was just getting started. You'll have the opportunity to revert. Thank you very much. Mr. Kortman. Well, at least you know what areas we're interested in. Good morning. May it please the Court of Counsel. Good morning. Justice Cage, you hit this right on the head. To start with, the burden of proof, who had the burden of proof here, was laid out in this court's opinion in Roper v. Johns, and it wasn't my client. It was the party seeking to reduce his income for child support purposes. So the burden was on Michael to come forward with evidence with regard to these loan terms. I tried this case. There was no such evidence in the record. He came forth with no evidence. The idea that a trial judge has no discretion whatsoever to modify terms to make them reasonable, which is what Judge Katz found in this case, the repayment term was not reasonable. That's in her order. Well, Mr. Kiyanka says it's just not permitted under the statute. Then if that is the case, then this court would have to find then that Roper v. Johns was wrongfully decided because that is exactly what happened. And going further, this court would have to overrule the Heil case, which is cited in Roper v. Johns. Heil is the hunting lodge case. It's the case where, again, this court found that a business expense to buy a hunting lodge, to take clients to a hunting lodge, was a reasonable and necessary expense in part, in part. And that's what the court did. What the court did is it disallowed 50 percent of all of the payment related to that hunting lodge. But we're talking about amortization versus what is a reasonable expense. Yes, ma'am. And I think there were two ways you could have done that, and I think Hill is instructive on this point. What Judge Katz did is she followed what the trial court in Roper v. Johns did. She re-amortized the debt. Justice Katz is correct. It was re-amortized, I believe, over a 40-year period of time. And there's nothing in that Roper opinion that had to show bad faith. There was never an allegation that the young man went back to school intentionally to reduce child support. But Mr. Kiyonka is distinguishing those cases by saying that the original debt was not 100 percent valid. And in this case, every debt that was incurred is beyond dispute that it was necessary so that the cases that you're talking about are distinguishable somehow. Well, the only thing I would say to that, Judge, is having read all of those cases, that's never stated in any one of those cases ever that a portion of that debt was unreasonable. That's just simply not said. When you look at debt necessary, and it's repayment of debt necessary to produce income, it's repayment of debt, to say that I can look at that concept and I am always absolutely locked in to whatever terms a litigant is able to obtain is simply unreasonable. It's not what happened in Roper. It's not what happened in Hill. And it's not what the court did in Hile. It's not a question of pointing a finger and casting blame. That's not the point. The point was what is the balance between the business owner? What is the balance between the business owner and the children? What benefit do the children gain by this debt? And that is the point. It's very clear in Roper that that's the point, that was the logic in this court's opinion affirming it, is that it specifically instructed trial courts to strike a balance between the needs of the children and the needs of the business owner. In this particular case, though, Mr. Kiyonka also argues that there's no basis for just picking a reamortization. And there must be some reasonable basis for a trial court to do this kind of thing. So what are we to look at to determine whether Judge Katz did the right thing? Okay. If you look at what the trial court did in Roper, it amortized the loan over the length of the young man's prospective work career. That's what it did. She did exactly the same thing. It's actually laid out in her order. She states the age of the parties at the time of trial and then amortized over that period of time. And I don't have the page cited for you, Judge, but I read it. I have it. Thank you. I recall that that was actually what her intent was. So you think that the basis for that amortization is a logical and fair one? I think it is a logical and fair approach. This isn't scientific. It isn't Eckler-Kutcher. It's just not a theory like that. One of the things I'm sure Mr. Kanko wanted to talk about I'd like you to address is this 9% interest rate. I mean, 9% in today's market. Judge, it was ‑‑ I actually didn't do that, but it was applied straight out of statute. I know what the judge did. There was never a discussion at the trial court level about any other interest. There was never a suggestion to the court of any other interest. It was fairly apparent. This was a two‑day trial. I think it should have been fairly apparent at the beginning of this case that Dr. Mike would get the business interest, Dr. Kelly would get some of money to try and equalize those two awards. We simply took the position that the statute says 9%. That's what the court should do. I don't think the court ever had a contrary request from anyone, quite frankly. Now, I will say this. But you took the statute that talks about statutory interest in money judgment. Yes, ma'am. That's exactly what we did. And I would agree. Is there any case law that you're aware of that says you don't do that? There is case law that says in domestic relations cases, and to my knowledge, only in domestic relations cases, it's discretionary. It's not mandatory. And I don't believe we argued it was mandatory in the brief. But, no, I would agree. I think that's an accurate statement of the law. It's discretionary. It is discretionary. You can tell I didn't do a lot of marriage. I understand that. Unfortunately, I have. I know. The other issue, and I don't want to beat this to death, because I think Mr. Lufer and Mr. Grimace were trying to get to this point. I think the standard of review is an abuse of discretion. I do not believe it's a de novo review. This isn't a question of what is income. It's a question of whether Judge Katz appropriately exercised her discretion, whether it be the Child Support Award or the Maintenance Award. Go ahead. No, I was just going to ask if anyone had any other questions. Oh, I do, of course. You had an expert in this case. We did. And is it true that the expert testified that the needs of the children were $15,000 per month? Is that what I was understanding? I know there's arguments that it was $8,000 by the part of the board. My recollection is $15,000 is probably close. I think it's Exhibit 24 or 24A of our exhibits that had a proposed budget. That changed a little bit with Judge Katz's ruling on that post-trial motion, which would have increased that by another $1,500 a month. But I think that's close. I think the total expense was about $19,000, $19,500, something like that. Okay, once you added in the amendment. So the $18,000 was based upon the testimony of an expert. And that testimony, my recollection, was based upon actual spending that had occurred over the almost two years that the case had been pending. Okay, I just wanted to make sure there was no contrary expert by Dr. Mike, as you called him. Yeah, and it's with no due respect to Dr. Jones, who's in the courtroom. We've got doctors all over the place in this case. Okay. No, there was no contrary evidence, just like the issue on the interest rate or the amortization. There was no contrary evidence presented. Okay, thank you. Anyone else? No, thank you for your argument. Mr. Kiyanka, now you have opportunity for rebuttal. Yes, thank you, Your Honor. I hope we've satisfactorily answered the question about Wilbur. I think we're not saying it was wrongfully decided, because that's the critical difference. They found that his going to St. Louis U Law School was not reasonable. I guess he should have gone to SIU Law School, which is much less expensive. I think it was the double degree. That was the key. So once they find it wasn't reasonable, then they have some discretion in the statutes. There was no such finding in this case. Well, I really see a golden opportunity for abuse, and I'm not saying that here. Let's say that somebody calculated, well, the kids are going to reach majority in five years, so I'm going to front load it all for five years and then I won't have to pay anything. Yes, and, Your Honor, that can be litigated at the trial level, I think, when you have that situation. Even if they're all reasonable? Well, the trial judge can determine whether that person had any choice. Dr. Michael has a right to run his business, even though he's going through divorce, and if he sees an opportunity to purchase additional businesses to expand the business with which he's been very successful, then he's going to do that if it's necessary to do it. But nobody's questioning that. If he has to take a shorter loan, he has to take a shorter loan. And all of that is taken care of in Section 505. Where the judge has discretion is when you get to the bottom line. Now, we didn't really get to argue that in the argument because we have so little time. We discussed it in our brief. But in this case, even apart from that, you see the judge, if the judge had taken the actual payments and used those to reach the bottom line, then the net income for just that person would have been $1145,000. Her figure was $18,000 over that. That's a huge, huge difference. That's an abuse of discretion in and of itself. In addition, as we point out in the brief, according to Dr. Kelly's own sworn financial statement, which she reaffirmed at trial, she says the children's expenses are $8,000, mine are $10,000. Well, there's some overlap there, of course, obviously. So their combined expenses are $18,000. That was the whole child support award. Even if you allow, if the trial judge can allow a little cushion there over and above that, if the judge had done the proper amortization and come up and then applied the 32% guideline without reduction, just applied the 32% guideline, the child support award in this case would have been $14,000 and some odd a month. It would have been $115,000, which is, as you say, that is the figure that the district expert came up with at trial, which was higher, of course, than the earlier figure, which had been presented. But when you look at the whole picture, and the cases do say that you look at the whole picture, she has 55% of the property. You can look at that, which is even as adjusted as $1.3 million. She earns $100,000 a year. She gets maintenance of $8,500 a month, another $100,000 a year, and then gets $18,000 a month in child support. This is far beyond what the cases say is required, which is to maintain them in the pre-dissolution lifestyle. This is far beyond that line into the windfall category. The cases say, you know, you have to find that line between maintaining the pre-dissolution lifestyle and windfall. We're not saying what that figure should be. We're not saying it should be nothing. We're not saying that you shouldn't pay reasonable child support. What we're saying is that $18,000 a month, under all the facts of this case, is simply unreasonable and an abuse of discretion. What about the 9%, Mr. Kanica? Yes, I just included that. It wasn't raised below. We did raise in our notice of appeal the issue of the property, you know, the property settlement, and so my position is that the interest award is part of the property settlement and that since this is in the nature of an equitable proceeding, we can ask that if it is remanded, that the judge reconsider this because it does seem that the judge was under the mistaken belief that she was required to apply the statutory interest rate of 9%. And we cited a case and the petitioner agrees that that doesn't apply in this award. Why do you think she was under the mistaken belief that she had to? Because it says the statutory interest rate in the order. The order says the statutory interest rate. Well, I mean, it was, it is the statutory interest rate that you apply to judgments whether or not it's discretionary. I'm inferring that therefore she may have thought, but whether she thought it or not, in today's market, 9% is... Pretty sweet. Pretty, pretty. If Dr. Michael wanted to say, I want to pay off this half a million dollars, he'd go out and borrow money to do it, which obviously he's not going to do because, you know, for other business reasons, but he could probably borrow it at much less than that. He probably could, but then on the other hand, she's not getting the benefit of it, and that's why there's the interest rate. And if it's such an onerous burden, he could go out and borrow it at a much preferred rate. Right, but in effect, the judge says, the judge said that he can pay it over time, $7,500 a month, plus interest, and we're just saying that's fine, and she should get some interest. It just should be, it shouldn't be 9%. That's kind of a punitive amount. That's the amount on judgments, which is, you know, to, well, I won't go into the reasons for that for judgments, but I think that's a different policy involved when you're talking about interest on judgments. Thank you. Thank you, Mr. Campbell. Thank you. Thank you, gentlemen. Thank you. We'll take a matter under advisement.